**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**JIMMY ELDRIDGE LONG**                                                    **PLAINTIFF**

**v.**                                                  **CIVIL ACTION NO.: 1:13-cv-506-MTP**

**RONALD KING, ET AL.**                                                   **DEFENDANTS**

## OPINION AND ORDER

THIS MATTER is before the Court on the Motion for Summary Judgment [30] filed by

Defendants Ronald King, Regina Reed, Roderick Evans, James Cooksey, Connie Smith, and

Penny Bufkin.  Having considered the Motion, applicable law, and case record, the Court finds

that Defendants' Motion [30] should be granted.

## FACTUAL BACKGROUND

On November 16, 2012, Plaintiff Jimmy Eldridge Long, proceeding *pro se* and *in forma*

*pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983.  The allegations in Plaintiff's

Complaint occurred while he was a post-conviction inmate at South Mississippi Correctional

Institution ("SMCI") in Leakesville, Mississippi, where he is currently incarcerated.  In his

Complaint and as clarified in his testimony at the *Spears*[1] hearing, Plaintiff alleges that

Defendants violated his constitutional rights by failing to provide adequate protection from

harm.

According to Plaintiff, he was a member of a prison gang, the Aryan Brotherhood

("AB"), but he became a witness against two members of the AB in a murder case.  In 1997,

after Plaintiff became a witness against members of his former gang, he learned that the AB had

_____

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

1

ordered "a hit" on his life.  Plaintiff alleges that, in 2001, four AB members assaulted him.

Thereafter, Plaintiff was released from prison.

On November 4, 2004, however, Plaintiff returned to prison.  According to Plaintiff, in

2012, a prospective member of the AB informed Plaintiff that the AB had renewed its "hit" on

Plaintiff's life.  Plaintiff attempted to inform an officer of his situation, but Defendant Regina

Reed allegedly interrupted the conversation and told Plaintiff she did not want to hear anymore.

According to Plaintiff, shortly thereafter, two members of the AB were walking toward him as

he stood in line for a meal, but members of another gang, the Mob Boys, stopped the AB

members because they were entering the Mob Boys' "area."  The next day, AB members

allegedly approached Plaintiff, but were again stopped by members of the Mob Boys.

Thereafter, the Mob Boys allegedly offered to protect Plaintiff for $50.00 a week.  Plaintiff

alleges he paid the Mob Boys a total of $250.00 for protection.

Plaintiff alleges that he informed Defendants Roderick Evans and Ronald King that his

life was in danger, but Defendants failed to act on the information.  Plaintiff also alleges that

Defendants Connie Smith and James Cooksey had a duty to investigate his requests for

protective custody but failed to properly investigate.  According to Plaintiff, he also informed

Defendant Penny Bufkin of the danger posed to his life, and she informed Plaintiff that there was

no information regarding him being a witness against the AB in the Mississippi Department of

Corrections's files.

Plaintiff was not attacked by any AB member, and eventually, Plaintiff was transferred to

the Mississippi State Penitentiary in Parchman, Mississippi.  In March, 2013, officials

discovered that Plaintiff had been a witness against the AB.  As a result, Plaintiff was placed in

protective custody.[2]

Plaintiff seeks monetary damages in the amount of $250.00–the amount he paid the Mob Boys for protection.  Plaintiff also seeks to have Defendants' acts and inactions relating to their alleged failure to protect him reflected in their employment records.  In their Motion for Summary Judgment, Defendants claim that Plaintiff has not made a valid claim for failure to protect and that qualified immunity bars the claims against them.

## ANALYSIS

**Summary Judgment Standard**

A motion for summary judgment will be granted only when "the record indicates that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  The Court must view "the evidence in the light most favorable to the nonmoving party." *Id.* However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).  In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

---

[2] Thereafter, Plaintiff was transferred to the Wilkinson County Correctional Facility ("WCCF") in Woodville, Mississippi, and then transferred back to SMCI.

3

**Qualified Immunity Defense**

Defendants maintain they are entitled to summary judgment as to Plaintiff's claims against them in their individual capacity based on the doctrine of qualified immunity. Under Section 1983, government officials performing discretionary functions in their jobs are entitled to qualified immunity from civil liability to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[Q]ualified immunity generally protects all but the plainly incompetent or those who knowingly violate the law." *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (internal quotations and citation omitted).

When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). Courts use a two-step analysis to determine whether qualified immunity applies. "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009). Second, if a violation has been alleged, the court must determine "whether [the officers'] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007).

"The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001). Thus, "[a]n official is eligible for qualified

immunity even if the official violated another's constitutional rights." *Id*. Whether the official acted with objective reasonableness is an issue of law for the court. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

In this case, Plaintiff asserts that Defendants failed to protect him from harm at the hands of his fellow inmates. Under the Eighth Amendment, prison officials have a duty to protect inmates from violence by fellow inmates. *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). However, every injury suffered by one prisoner at the hands of another does not amount to a constitutional violation by prison officials. *Farmer*, 511 U.S. at 834. To prevail on a failure to protect claim, Plaintiff must show that "he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999).

Deliberate indifference consists of the official being aware of both the "facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference "'is an extremely high standard to meet.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). Negligent failure to protect an inmate does not rise to the level of a constitutional violation. *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer*, 511 U.S. at 837.

Defendants' actions and/or inactions do not rise to the level of deliberate indifference. Plaintiff's allegations demonstrate that prison officials investigated his complaints. According to

5

Plaintiff, Defendant Bufkin reviewed his prison records and informed him that there was no information regarding him being a witness against the AB.  At that time, Plaintiff's prison records did not support his allegations. Nevertheless, measures were taken to protect Plaintiff. Defendant Smith placed Plaintiff in lockdown while his request for protective custody was investigated, and Plaintiff was not attacked by any member of the AB. ([30-2] at 11.)  Officials did not become aware of the fact that Plaintiff had served as a witness against AB members until after he was transferred from SMCI.  Thereafter, Plaintiff was placed in protective custody.

These facts coupled with the fact that Plaintiff was not directly threatened demonstrate that Defendants did not ignore an excessive risk to Plaintiff's safety.  Plaintiff failed to present, and the record does not contain, summary judgment evidence that Defendants knew Plaintiff was under an imminent threat of harm and intentionally ignored the threat.  Even if Defendants did not properly respond to Plaintiff's situation, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference . . . ." *Estate fo Davis ex rel. McCully v. City of N. Richlan Hills*, 406 F.3d 375, 379 (5th Cir 2005). Additionally, Plaintiff has failed to establish that the actions taken by Defendants were objectively unreasonable, which is required to defeat a qualified immunity defense. Accordingly, Plaintiff cannot overcome Defendants' asserted qualified immunity defense.

**Official Capacity**

To the extent Plaintiff asserts claims against Defendants in their official capacities, such claims also fail.  A suit against a public official is his official capacity is in effect a suit against the government entity he represents. *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987).  To establish liability, Plaintiff must prove that a policy, custom, or practice of that government

entity was the "moving force" behind the constitutional violation. *Monell v. Dep't. of Social Servs.*, 436 U.S. 658, 694 (1978).  A "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't.*, 130 F.3d 162, 167 (5th Cir. 1997).  Plaintiff has failed to come forward with specific facts regarding the policy or custom and its relationship to the underlying alleged constitutional violation.  Moreover, Plaintiff has failed to establish an underlying constitutional violation.  Accordingly, Defendants are entitled to judgment as a matter of law in both their individual and official capacities.

## CONCLUSION

For the reasons stated above, the Court finds that Defendants' Motion for Summary Judgment [30] should be granted.

IT IS, THEREFORE, ORDERED that:

1.    Defendants' Motion for Summary Judgment [30] is GRANTED and this action is dismissed with prejudice.

2.    A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED, this the 22nd day of October, 2013.

s/ Michael T. Parker
United States Magistrate Judge